UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NANCY J. HODGES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 06 C 1777<br><br>Mag. Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Claimant, Nancy Hodges ("Hodges" or "claimant"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Hodges' claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(I) and 423. The Commissioner filed a cross motion for summary judgment asking that this Court uphold the decision of the Administrative Law Judge ("ALJ"). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, Hodges' motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

## BACKGROUND

### Procedural History

Hodges filed an application for DIB on April 25, 2003, alleging a disability onset date of July 10, 2001. (R. 62-67). Claimant alleged she was disabled as a result of a

triangular fibrocartilaginous complex ("TFCC") tear in the right wrist and chronic right wrist pain. (R. 28, 116). Her application was denied initially on June 20, 2003 and after a timely request for reconsideration on November 3, 2003. (R. 25-28, 30-33). Thereafter, Hodges requested a hearing. (R. 34). ALJ Denise McDuffie Martin held a hearing on July 12, 2005 in Orland Park, Illinois. (R. 277-298). Claimant and Thomas Grzesik, a Rehabilitation Counselor and vocational expert ("VE"), testified at the hearing. (*Id.*). On December 10, 2005, ALJ McDuffie Martin issued a written decision, finding that Hodges was not disabled. (R. 13-20). The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (R. 4-7); *Estok v. Apfel*, 152 F. 3d 636, 637 (7th Cir. 1998). Claimant subsequently filed this action in the district court.

**Claimant's Testimony**

At the time of the hearing, Hodges was a 46-year-old woman with a junior college degree and past experience that included employment as a court reporter. (R. 281). Hodges is married with two children. (*Id.*). Claimant testified that continued pain in her right wrist caused her to stop working as a court reporter on July 10, 2001. (R. 282-283). She said that she had been attending physical therapy approximately two times per week since 2000. (R. 283-284). Claimant had been receiving treatment from Dr. Smith for several years. (R. 283). She continued to see him at the time of the hearing. (*Id.*).

Hodges testified that when her pain was most severe, she would rate it at about an eight on a scale of one to ten. (R. 284). Claimant said that she experiences that pain level for more than half of each month. (*Id.*). Pain in her wrist can occur with

2

lifting, writing, brushing her teeth, combing her hair and sometimes even when turning pages in a newspaper. (R. 293). Hodges stated that she can no longer ride a bike or play tennis due to her wrist pain. ( R. 287). She stated that initially she was treated conservatively, with medications, injections, and physical therapy. (R. 283-286). She later underwent surgery in October 2002, but claimed the surgery did not relieve her pain. (*Id.*). Hodges indicated that her pain was limited to her right wrist and hand and that the pain did not extend up her arm. (R. 293).

Despite the wrist pain, Hodges testified that she continued to drive a car everyday and complete household chores, such as going to the grocery store, doing laundry, and washing dishes. (R. 286, 289). Hodges stated that she relied on her family to perform heavier chores, such as carrying the groceries or lifting the laundry basket, and to perform activities such as ironing, folding clothes and slicing food. (R. 286, 294). Although right-hand dominant, Hodges testified that it was now second nature for her to use her left hand and that she could lift different amounts with her left hand compared to her right hand. (R. 289, 293).

Hodges stated that she had no problems concentrating or staying focused on tasks. (R. 290-291). Claimant testified that she had counseling sessions with Dr. McGraff for about six months and had been taking Lexapro for anxiety but she stopped taking the medication around September 2004. (R. 291-292).[1]

**Medical Evidence**

---

[1] Claimant has not raised any issues with respect to depression and/or anxiety. Therefore, for purposes of brevity, this Court will not set forth those medical records in detail.

Hodges began receiving medical treatment from David J. Smith, M.D. for her right wrist beginning in July of 2000. (R. 177). At first, Dr. Smith treated claimant conservatively. She received a cortisone injection in her wrist and was prescribed Celebrex and physical therapy. (R. 172-177). On July 9, 2001, Dr. Smith ordered claimant to remain off work. (R. 173). At that same visit, Dr. Smith noted that the repetitive nature of Hodges' job as court reporter was the obvious cause of her problems. (R. 173). He further reported that when Hodges went on vacation or did not go to work, she experienced relief from her pain. (*Id.*). Over the next several months, claimant continued to receive cortisone injections and attend physical therapy. (R. 166, 169-172). Dr. Smith continued to recommend that Hodges refrain from working as a court reporter because some improvement resulted when she was not working. (R. 161-62, 164-65, 170-172).

On October 15, 2001, Dr. Smith referred Hodges to Dr. Daniel Mass, an upper extremity specialist at the University of Chicago. (R. 170). On November 19, 2001, Dr. Mass reported that claimant's MRI showed attenuation of scapholunate and lunotriquetral ligaments as well as TFCC. (R. 167). He documented tenderness and occasional popping and clicking with radial deviation, but adequate range of motion and grip strength. (*Id.*). Dr. Mass indicated that Hodges was a candidate for a right wrist arthroscopy. (*Id.*).

On April 26, 2002, after Hodges had received several cortisone injections and undergone physical therapy, Dr. Smith opined she had reached maximum medical improvement absent surgery. (R. 165.). Dr. Smith stated that based on the information he had thus far, he did not believe that Hodges would be able to return to work as a

4

court reporter. (*Id.*). He suggested that claimant find some other type of work because he did not think surgery would be able to return her to the high demands of her job. (R. 165-166).

Claimant received another cortisone injection on June 24, 2002. (R. 162). Dr. Smith noted that Hodges was no longer doing the transcription work. (*Id.*). By August 2002, Hodges was again experiencing pain after approximately one month of relief. (R. 161). Dr. Smith noted that she would proceed with the surgery. (*Id.*).

On October 9, 2002, Daniel P. Mass, M.D., performed a right wrist arthroscopy which revealed a degenerative central tear of the triangular fibrocartilaginous complex ligament, mild gapping of the scapholunate joint and mild disruption of the scapholunate ligaments. (R. 190-191). After six weeks, Dr. Mass removed Hodges' cast and ordered her to start physical therapy. (R. 183). By January 2003, claimant had pain-free full range of motion and good stability at the distal radial ulnar joint. (R. 203). In March 2003, Hodges reported tightness and discomfort when she exercised but that she no longer had the pre-operative pain. (R. 202). Dr. Mass noted excellent stability and full range of motion. (*Id.*). Claimant reported that she had been trying to start working as a stenographer and had made slow progress. (*Id.*). Dr. Mass recommended heating her wrist prior to working, icing it afterwards and taking a mild anti-inflammatory. (*Id.*).

At her six month follow-up visit in May 2003, Dr. Mass documented Hodges' excellent range of motion and strength. (R. 201). Dr. Mass noted that claimant was doing "quite well" and had actually tried doing stenography, but still had some problems with endurance. (*Id.*). In July 2003, Dr. Mass reported that Hodges had regained full range of motion and almost normal functioning. (R. 200). Claimant reported that she

was doing quite well with her "steno machine" but experienced some pain with typing. (*Id.*). Dr. Mass stated that Hodges needed to learn to move her shoulder or change positions while typing. (*Id.*). He allowed her to continue working on her steno and typing and released her to return to work when she felt comfortable. (*Id.*).

Despite being released to return to work by Dr. Mass, from February 2003 until October 2004, Dr. Smith filled out slips indicating that claimant was to remain off work. (R. 221-230). Following Hodges' surgery, Dr. Smith documented her progress and monitored her physical therapy. (R. 155-57, 218-220). On March 17, 2003, Dr. Smith noted that Hodges continued to show progress and had increased use of her wrist with some increased soreness. (R. 157). On May 19, 2003, Dr. Smith noted that claimant was "working on her steno machine up to 60 minutes." (R. 155). He also stated that "endurance has been the greatest restriction that she has had." (*Id.*). Dr. Smith further reported that claimant appeared "to be responding to outpatient therapy with improving tolerance." (*Id.*). He opined that claimant was unable to return to her previous work. (*Id.*). On July 21, 2003, Dr. Smith noted that Hodges had "intermittent discomfort on her activity level" and "lack of endurance with repetitive work." (*Id.*). She felt physical therapy was helping. (*Id.*). Dr. Smith reported that claimant remained off of work. (*Id.*). However, he indicated that Hodges tried to do some transcription work to see if she had problems and to see what her tolerance was. (*Id.*).

State Agency physician, Dr. William Conroy, reviewed claimant's medical records and prepared a residual functional capacity assessment dated June 13, 2003. (R. 204-211). Dr. Conroy noted that claimant was post-TFCC repair, that she complained of wrist pain since the surgery, that she was receiving physical therapy, that her motor

strength in her right wrist was 5/5 and that she continued to improve. (R. 205-206). Dr. Conroy concluded that Hodges could perform a full range of light work: she could occasionally lift up to twenty pounds, frequently lift ten pounds, and sit or stand for up to six hours in an eight hour period. (R. 205). He found no other restrictions. (R. 205-211). Another State Agency physician, Dr. Paul Smalley, concurred. (R. 211).

By November 2003, Hodges reported to Dr. Smith that she was eighty-five to ninety percent improved overall. (R. 220). She continued with physical therapy. (*Id.*). Claimant saw Dr. Smith again in January 2004. (*Id.*). She reported that her wrist felt the same. (*Id.*). Dr. Smith noted that Hodges' physical therapy was progressing. (*Id.*). Claimant felt that the physical therapy was helping and she was working to regain her mobility. (*Id.*). Dr. Smith indicated that Hodges had not been able to resume her previous level of activity and she was going to continue with the same restrictions on her activities. (*Id.*).

On January 5, 2004, Dr. Ram Aribindi conducted an independent medical evaluation. (R. 231-35). Hodges reported that she had good motion and strength, but experienced pain with prolonged typing and weightbearing on the right wrist. (R. 231). During the examination, Hodges denied any problems with activities of daily living. (*Id.*). Dr. Aribindi documented some tenderness with the dorsal ulnar aspect of Hodges' wrist joint and some pain with ulnar deviation of the wrist, but full dorsiflexion and palmar felxion, good radial deviation, no swelling, no clicking or popping with range of motion, and intact sensation and motor function. (R. 231-32). The doctor's impression was "continued pain about the right wrist following TFCC debridement and capsular shrinkage." (R. 232). Dr. Aribindi concluded that Hodges could not perform her job

7

duties as an official court reporter because she could not use her hands for typing for up to six to eight hours per day as required. (*Id.*). However, he found that Hodges could work as a court reporter part-time for four hours per day, perhaps longer with breaks. (*Id.*). Dr. Aribindi recommended that claimant follow up with Dr. Mass for further evaluation or treatment. (*Id.*).

At a follow-up visit in July 2004, Hodges informed Dr. Smith that her wrist was sore. (R. 219). She rated her pain level at a six. (*Id.*). Dr. Smith administered a cortisone injection and advised Hodges to continue her physical therapy program. (*Id.*). On September 20, 2004, Hodges reported that she had four to five weeks relief with the cortisone injection. (R. 218). Dr. Smith noted that claimant's wrist was immobilized in an elastic Ace wrap and that she continued to remain off of work. (*Id.*). He advised Hodges to continue with physical therapy. (*Id.*). Dr. Smith reported that he had discussed with claimant the possibility that she had reached maximum medical improvement. (*Id.*). At the time of this visit, claimant's medications included Aleve and Motrin as needed. (*Id.*).[2]

**The Vocational Expert's Testimony**

VE Thomas Grzesik testified at the hearing. (R. 294-298). The VE reviewed the file and was present throughout the hearing. (R. 294-295). The VE testified that

---

[2] The record includes physical therapy notes and medical bills that Hodges first submitted to the Appeals Council after the ALJ issued her unfavorable decision. (R. 248-276). A court may consider such evidence if the claimant shows good cause for failing to submit new and material evidence during the prior proceedings. 42 U.S.C. § 405(g) (sentence six). Hodges cites this evidence in her brief but does not acknowledge that the evidence was not in the record before the ALJ. She has not requested remand pursuant to sentence six of § 405(g) nor has she addressed the requirements for such remand. Accordingly, this Court will not consider the new evidence.

Hodges used to work as a court reporter, which was a sedentary and skilled position. (R. 295). The ALJ asked the VE to consider whether a hypothetical individual with the claimant's age, education and work experience could work in the national economy if the individual was limited to light work that involved only occasional use of the right hand and wrist, occasional fingering and handling, and no typing or court reporting. (*Id.*). The VE testified that such an individual could perform work as a gate guard (4,500), machine tender (5,000), and cashier (2,500). (*Id.*).

The ALJ next asked the VE to consider whether the same hypothetical individual could work if she was limited to no repetitive use of the right hand and wrist. (R. 296). The VE clarified with the ALJ that by using the term "repetitive," the ALJ meant "more than one time," or "one after the other." (R. 296). The ALJ answered affirmatively and further stated that, "you'd have to use the hand on a repetitive basis." (*Id.*). With that understanding, the VE testified that there would be no jobs of any significance and that all of the aforementioned jobs would be eliminated if the hypothetical individual was limited to no repetitive use of the right hand and wrist. (*Id.*). The VE further stated that his testimony was consistent with the information contained in the *Dictionary of Occupational Titles* ("DOT"). (R. 297).

**LEGAL ANALYSIS**

**I.      Standard of Review**

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir.

2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion, [she] need not discuss every piece of evidence in the record. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [her] assessment of the evidence to 'assure us that the ALJ considered the important evidence...[and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985)).

**II.     Analysis Under the Social Security Act**

To be entitled to disability insurance benefits under the Act, the claimant must establish that she is under a disability. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether

the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling ("a listing-level impairment"), (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176. The claimant has the burden of establishing a disability at steps one through four. *Zurawski v. Halter,* 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

At step one, the ALJ found that Hodges was not engaged in substantial gainful activity and had not been engaged in substantial gainful activity since July 10, 2001. (R. 19). At step two, the ALJ found that claimant's TFCC tear in her right wrist with surgical repair was a "severe" impairment. (*Id.*). At step three, the ALJ found that the impairment did not meet or medically equal any impairment that the Commissioner considered conclusively disabling. (R. 16, 19). Next, the ALJ concluded that Hodges retained the following RFC: light with occasional use of the right hand and wrist. (R. 18, 20). At step four, the ALJ determined that Hodges could not perform her past relevant work. (*Id.*). At step five, the ALJ found that claimant was capable of performing other jobs existing in significant numbers in the national economy. (R. 19-20). Therefore, the ALJ concluded that Hodges was not under a disability as defined in the Act. (R, 20).

Hodges argues that the ALJ erred because she disregarded the opinion of Dr. Smith, claimant's treating physician. Claimant also argues that the ALJ erred because she rejected favorable VE testimony without any explanation.

**III.     The ALJ Did Not Disregard The Treating Physician's Opinion**

If a treating physician's opinion is well-supported by objective medical evidence and not inconsistent with other substantial evidence, the ALJ must afford it controlling weight. 20 C.F.R. §404.1527(d)(2). Hodges argues that the ALJ disregarded her treating physician's opinion and gave controlling weight to the opinions of the State Agency physicians. This Court disagrees.

The ALJ did not give controlling weight to the State Agency physicians. Indeed, while the ALJ recognized that the State Agency physicians reached a similar RFC assessment, she specifically stated that her RFC assessment was based on an independent consideration of the evidence uninfluenced by what was decided by the State Agency physicians. (R. 18).

Claimant also argues that the ALJ should have given controlling weight to the opinion of her treating physician "with regard to her inability to perform repetitive activities with her right upper extremity." (Clmt's brief, pg. 8). Contrary to claimant's suggestion, Dr. Smith did not opine that she was unable to perform repetitive activities with her right upper extremity. Rather, on July 9, 2001, Dr. Smith recommended that claimant remain off work because the repetitive nature of her work as a court reporter was "the obvious cause of her problems." (R. 173). Thereafter, Dr. Smith continued to recommend that Hodges refrain from working as a court reporter because some improvement resulted when she was not working. (R. 161-62, 164-65, 170-172).

Claimant had arthroscopic surgery on her wrist on October 9, 2002. (R. 190-191). On March 17, 2003, Dr. Smith reported that claimant had increased use of her right wrist with some increased soreness and that she had tried working on her steno

12

machine to see what her tolerance was. (R. 157). On May 19, 2003, Dr. Smith noted that claimant was "working on her steno machine up to 60 minutes." (R. 155). He also stated that "endurance has been the greatest restriction that she has had." (*Id.*). Dr. Smith further reported that claimant appeared "to be responding to outpatient therapy with improving tolerance." (*Id.*). Again, he opined that claimant was unable to return to her previous work. (*Id.*). On July 21, 2003, Dr. Smith noted that Hodges had "intermittent discomfort on her activity level" and "lack of endurance with repetitive work." (*Id.*). Dr. Smith reported that claimant remained off of work. (*Id.*). However, he indicated that Hodges was trying to do some transcription work to see if she had problems and to see what her tolerance was. (*Id.*).

By November 2003, Hodges reported to Dr. Smith that she was eighty-five to ninety percent improved overall. (R. 220). In July 2004, claimant reported that her wrist was sore and rated her pain as a six. (R. 219). Dr. Smith administered a cortisone injection and advised Hodges to continue her physical therapy program. (*Id.*). At a follow up visit in September 2004, Dr. Smith reported that he had discussed with claimant the possibility that she had reached maximum medical improvement. (R. 218). He advised her to continue with physical therapy and take Aleve and Motrin as needed. (*Id.*).

However, at no time did Dr. Smith state that claimant was unable to perform repetitive activities with her right upper extremity. While a few of Dr. Smith's records reveal endurance issues with repetitive work, that does not amount to an opinion that the Hodges is precluded from performing any repetitive activities with her right upper extremity. Read as a whole, Dr. Smith's records do not support claimant's argument.

13

Furthermore, this Court finds that the ALJ gave appropriate weight to Dr. Smith's opinions and adequately explained her reasoning. Despite being released to return to work by Dr. Mass in July 2003, between February 2003 and October 2004, Dr. Smith filled out slips indicating that claimant was to remain off of work. (R. 221-230). The ALJ found that the "off work" slips apparently referred to claimant's position as a court reporter. (R. 17). The ALJ agreed that Hodges could not return to work as a court reporter but rejected Dr. Smith's opinion to the extent that he suggested that Hodges could not work at all. (*Id.*). The ALJ explained that Dr. Smith never indicated "that the claimant could not perform different, less repetitive work." (*Id.*). Dr. Smith's records support this finding. Moreover, as noted by the ALJ, in April 2002, Dr. Smith suggested that claimant find some other type of work because he did not think surgery would be able to return her to the high demands of her job. (R. 17, 165-166). Thus, the ALJ's opinion that the "off work" slips referred to claimant's position as a court reporter is supported by the record.

That being said, the ALJ covered all bases by rejecting Dr. Smith's opinion to the extent that he suggested that Hodges was unable to perform any work at all. (R. 17). The ALJ indicated that such an opinion contrasts with the other evidence of record. (*Id.*). This Court agrees. Indeed, no doctor suggested that Hodges was unable to perform different, less repetitive work with her right hand. To the contrary, in July 2003, Dr. Mass released claimant to return to work when she felt comfortable. (R. 200). Furthermore, after an independent medical examination, Dr. Aribindi found that Hodges could work as a court reporter part-time for four hours per day, perhaps longer with breaks. (R. 18, 232). In short, the ALJ's finding in this regard is supported by

14

substantial evidence.

Because the ALJ gave appropriate weight to the opinions of claimant's treating physician and adequately explained her reasoning, we will not remand on this basis.

## IV. The ALJ's RFC Determination Is Supported By Substantial Evidence

Next, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ found that Hodges had the residual functional capacity to perform light work with occasional use of the right hand and wrist. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. SSR 96-9p. The ALJ clearly took into account claimant's endurance issues and adjusted her RFC determination accordingly. Again, the ALJ noted that Dr. Smith did not indicate that claimant could not perform different, less repetitive work. (R. 17). The ALJ relied on: Dr. Smith's records; Dr. Aribindi's opinion; the fact that claimant was not as limited as one might expect in completing her activities of daily living; and the fact that claimant was not prescribed any medication stronger than Aleve or Motrin. (R. 17-18). Based on the foregoing, we find that the ALJ's RFC determination is supported by substantial evidence.

## V. The ALJ Properly Evaluated The VE's Testimony

Hodges also argues that the ALJ erred because she rejected favorable VE testimony without explaining her reasoning. The ALJ posed two hypothetical questions to the VE. First, the ALJ asked the VE to consider whether a hypothetical individual with the claimant's age, education and work experience could work in the national economy if the individual was limited to light work that involved only occasional use of the right hand and wrist, occasional fingering and handling, and no typing or court

15

reporting. (*Id.*). The VE testified that such an individual could perform work as a gate guard (4,500), machine tender (5,000), and cashier (2,500). (*Id.*).

The ALJ next asked the VE to consider whether the same hypothetical individual could work if she was limited to no repetitive use of the right hand and wrist. (R. 296). The VE testified that there would be no jobs of any significance and that all of the aforementioned jobs would be eliminated if the hypothetical individual was limited to no repetitive use of the right hand and wrist. (*Id.*). The ALJ failed to discuss the VE's response to the second hypothetical in her opinion. (R. 19). As a result, claimant asks this Court to reverse the ALJ's decision.

When an ALJ poses a hypothetical question to a VE, the question must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record. *Cass v. Shalala*, 8 F.3d 552, 555-556 (7th Cir. 1993) (stating that "all that is required is that the hypothetical question be supported by the medical evidence in the record."). Claimant argues that the medical records contain substantial evidence that she cannot use her right hand for repetitive activities. As discussed more fully above, this Court disagrees.

The second hypothetical posed by the ALJ limited the individual to no repetitive use of the right hand and wrist. The ALJ indicated that by using the term "repetitive," she meant "more than one time," or "one after the other." (R. 296). The ALJ further stated that, "you'd have to use the hand on a repetitive basis." (*Id.*). Simply put, the medical evidence does not support an impairment that limited Hodges to no repetitive use of her right hand and wrist. The VE testified that he reviewed the file and was present throughout the hearing. (R. 294-295). Furthermore, it is clear from the ALJ's

16

opinion that she did not believe that the second hypothetical accurately reflected claimant's limitations. (R. 17-18). Indeed, the ALJ's RFC finding (that claimant could perform light work with occasional use of the right hand and wrist) implicitly rejects the basis for the second hypothetical. Because this Court agrees that the second hypothetical did not accurately reflect claimant's limitations, the ALJ was not required to ask it or explain the VE's answer to it. *See Cass*, 8 F.3d at 555-556.

Moreover, if we remanded for the ALJ to explain why she rejected the VE's response to the second hypothetical, we are certain that the result would be the same. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Brown*, 869 F.2d 1055, 1057 (7th Cir. 1989). Based on the foregoing, remand is not warranted under these circumstances.

**CONCLUSION**

For the reasons set forth above, claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The decision of the ALJ is affirmed. It is so ordered.

**ENTER:**

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: September 6, 2007**